C. R. Barker *v.* County Court of Pleasants County and State Road Commission

(No. 7194)

Submitted November 11, 1931.    Decided November 17, 1931.

*Ambler, McCluer & Ambler,* for appellant.

*Frank J. Barron, Howard B. Lee,* Attorney General and *R. Dennis Steed,* Assistant Attorney General, for appellees.

Woods, Judge:

The State Road Commission, desiring to improve that portion of State Route No. 2 running through the lands of C. H. Barker, in Pleasants County, requested the county court of that county to secure the needed right of way. Condemnation proceedings were thereupon instituted by the county court. Barker appeared and assisted in striking the commissioners nominated to assess the damages to the lands on account of the proposed change or widening of said highway. The commissioners made their report in July of the present year. In September, Barker filed a bill seeking to restrain and enjoin the county court from proceeding further with said proceedings. After having had the prayer of his petition denied by the circuit court, Barker presented his bill, together with exhibits therewith, to this Court, which awarded the injunction prayed for. On the papers being returned to the circuit court, the county court filed its answer, and moved that the injunction be dissolved, which motion the court sustained. Barker brings error.

The sole question for determination is whether the county court has authority to acquire. such lands by condemnation. The lower court resolved this question in favor of the right of the county to condemn.

The appellant relies chiefly on Code 1931, 17-4-4. In the first two sentences of this section, it is provided that: "It shall be the duty of the county court of the county in which any state road or part thereof is located to obtain by purchase, dedication or grant, in the name of and for the state, the right of way for the same, or the right of way necessary to widen, straighten, grade or alter such road. The cost of acquiring such right of way shall be paid by such county court." Thereupon follows, as a concluding part of said section: "If any county court fails or refuses to obtain such right of way necessary for any of the purposes aforesaid within thirty days after being requested so to do by the state road commission, then the commission may secure such right of way in the manner provided by law and pay for the same out of the state road fund, which fund shall be reimbursed by the county court of the county in which such right of way is obtained. All claims for the reimbursement for right of way expenditures incurred by the state road commission subsequent to April twenty-first, nineteen hundred twenty-one, shall be filed by the commission with the clerk of the county court of the county where such expenditures are made, which claim shall be audited and paid as other claims against the county. Such claims shall be payable to the state road commission and returned by it to the state road fund."

It is the contention of counsel for the appellant that the use of the words "purchase, dedication or grant" in the aforesaid statute, limits the county court to the particular methods in the acquisition of rights of way for state roads, and that the county may not exercise the right of eminent domain for such purpose. The general rule is announced in 20 C. J. 533 that: "Inasmuch as the right of eminent domain is one which lies dormant in the state until legislative action is had pointing out the occasion, mode, conditions, and agencies for its exercise, the right to exercise the power must be conferred by statute, either in express words or by neces-

sary implication." So, we must hold that the words employed should not be so strictly construed as to defeat the evident purpose of the legislature. The principle of strict construction is less applicable where the powers are conferred on public bodies for essentially public purposes. Endlich, Interp. St., sec. 355. So, the right to condemn will be more readily inferred in favor of public corporations exerting powers solely for the public benefit than in favor of private individuals, or corporations organized for pecuniary profit. Lewis, Em. Dom., sec. 241.

Keeping in mind the foregoing principles, what have we? One of the oldest and commonest of uses for which private property may be taken is for the establishment of public highways. The establishment and use of such highways has been uniformly held to be for the public good. Our state constitution, Article VIII, section 24, bestows upon the county courts the "superintendence and administration of the internal police and fiscal affairs of their counties, including the *establishment and regulation of roads.*" This bestowal of power carries with it necessarily the right of the counties to exercise the right of eminent domain. *Adkins* v. *Wayne County Court*, 94 W. Va. 460. The aforesaid power conferred on the county courts by the constitution has been copied verbatim into our statute law relating to county courts, under the head of "Jurisdiction, Powers and Duties." Code 1931, 7-1-3. True, it is contended by the appellant that this grant of power is conferred with the restriction that it may be only "under such regulations as may be prescribed by law." That the power of eminent domain is conferred expressly upon the county courts as to the *establishment* of public roads, cannot be denied. Has there been any enactment of our legislative body taking this jurisdiction away from the counties? Appellant cites to the fact that by Code 1931, 17-9-4, the state road commission has been given authority to exercise eminent domain for the state roads and the county courts a like right for county and district roads. Code 1931, 54-2-14, provides for the exercise of eminent domain by the state, or any political division thereof as to the entry upon the land taken by the applicant. The county is a political

division of the state. *Barbor* v. *County Court*, 85 W. Va. 359. As we have shown the county has the authorization both by the constitution and under the general law to exercise the right of eminent domain.

The purpose of the legislature in enacting the present road law was to bring within one comprehensive statute a complete system of laws for the state governing the construction, reconstruction, maintenance and repair of all the public roads; defining and classifying them, and providing for a state system of roads connecting at least the various county seats. It also provided for a state road commission to carry into effect this plan. To make it a workable plan, the counties were given the county and district roads for supervision, while the state roads were placed under the supervision of the state road commission. The latter body was given the right to exercise the power of eminent domain in the construction of state roads under certain conditions. Code 1931, 17-9-4. The aim of the lawmakers was to create a plan, which, if put on foot by the state road commission, could not be hampered by the arbitrary action of some county court, refusing to condemn the property sought by the commission for a state road across its boundary. The legislature therefore provided that if the county did not get the right of way within a certain time that the commission would go ahead, exercise the right of eminent domain, and the county pay the expenses of the right thus obtained. Throughout a period of many years this plan has been followed by both the commission and the county courts. The statute under construction, when read in the light of the constitution, and the whole scheme of the chapter embodying the state road law, and under the principles of law governing heretofore cited, gives the county court the power to condemn under the facts and circumstances of the case under consideration. The construction that we have placed upon the statute is therefore not only sanctioned by reason but by precedent and practical construction for many years.

*Affirmed.*

LIVELY, JUDGE, concurring:

It is contended by appellant that the county court has not the power to condemn lands for a state road. There is no question in my mind that the constitution, Article VIII, sec-

tion 24, copied into the statute, Code 1931, 7-1-3, gives county courts the right of eminent domain to establish public roads. Roads cannot be established except on land, and how could the county courts do so without acquiring the land? The legislature recognizes such power in the county courts in the Code of 1931, 54-2-14, referred to in the opinion. But it is contended that the constitution and statute copying it provide that such right shall only be exercised, under "such regulations as may be prescribed by law;" and the law says that county courts shall have the right of eminent domain as to county and district roads, and the state road commission as to state roads. If so, what has become of the power granted by the constitution to county courts to condemn for public highways? Can it be annuled by the legislature by *regulations* as prescribed by law? Regulation does not connote destruction of a power. The legislature may regulate, but it cannot take away the power. To hold that the statute takes away that power and lodges it exclusively in the state road commission would render the act unconstitutional. We must give the road laws such interpretation as to make them harmonize with the constitution. Every nerve must be strained to that end. Regulation of the right to condemn is found in the statutes, and these regulations must be strictly complied with. Illustrative is chapter 54-2-14, Code 1931, which provides that the court or judge upon being satisfied that the county court is taking the land for public purposes for which eminent domain-lies, may enter an order allowing the county court to enter and take possession, but if it does enter and injuries the property, then it shall not be allowed, over objection of the land owner, to abandon the proceeding. It must stand for whatever damages are awarded, much or little. To repeat, the legislature has not, nor cannot, take from the county courts the constitutional right to establish public roads, by express words much less by implication. It cannot do so under the guise of regulation. It has not attempted to do so. This court should not do so.

MAXWELL, JUDGE, (concurring in result):

I concur in the result, but I do so only because of the preeminence of the constitutional provision that county courts

shall "have the superintendence and administration of the internal police and fiscal affairs of their counties, *including the establishment and regulation of roads * * *.*" (Italics inserted.) West Virginia Constitution, Article VIII, Section 24.

The legislative plan seems to have been to make a definite distinction between state roads and county-district roads in the matter of condemnation as evidenced by the following enactment: "The state road commission, as to state roads, and the county court of any county, as to county-district roads, may acquire by right of eminent domain any land or water, or any interest therein, or any rights, ways or easements thereon or thereover, for the purpose of constructing, widening, straightening, grading or altering any such road or highway * * * whenever a just compensation cannot be agreed upon with the owner or claimant of such property for such taking, use or damage." Code 1931, 17-9-4.

I think that in so far as this statute would limit to county-district roads the authority of a county court to condemn private property for a public thoroughfare it must yield to the constitutional authorization above quoted.

HATCHER, JUDGE, (concurring):

I concur in the reasoning of Judges Lively and Maxwell; I also concur in the result, but I do not approve of the manner in which the syllabus is phrased.